IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAVID SCOTT, et al.,          :
      Plaintiffs         :
                           :
      v.                  :        Civil No. AMD 05-1284
                           :
AMERICAN RED CROSS, et al.,  :
      Defendants      :
                     ...o0o...

MEMORANDUM OPINION

The plaintiffs are 58 former American Red Cross employees who were terminated in a reduction-in-force. They allege, *inter alia*, defendants wrongfully denied them severance pay totaling $727,433[1] and retention pay totaling $500,000. The plaintiffs instituted this suit in the Circuit Court for Baltimore City to claim those funds.[2] Plaintiffs filed a two-count complaint. In count one, they named as defendant their former employer, the American Red Cross, asserting as a ground for relief the Maryland Wage Payment and Collection Act. MD. CODE ANN., LAB. & EMPL. §§ 3-501, *et seq*. Pleading in the alternative, plaintiffs alleged in count two, *inter alia*, parallel claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*., naming as defendants, in addition to the Red Cross, two management-level employees of the Red Cross, defendants Martin H. Jones and Christian B. Hansen, who are described as ERISA fiduciaries. Defendants have moved to

---

[1] The amounts allegedly owed individual plaintiffs range from about $1400 to about $102,000.

[2] Defendants removed the case from state court on the basis of customary federal question jurisdiction under ERISA and also on the ground that federal courts exercise original jurisdiction over a case in which the American Red Cross is a party. *See American Red Cross v. S.G.*, 505 U.S. 247, 255-57 (1992).

dismiss as preempted the claims for severance pay that are based on state law, and they have moved to dismiss for failure to state a claim upon which relief may be granted the breach of fiduciary claims asserted pursuant to ERISA.[3] I have carefully reviewed the parties' submissions and no hearing is necessary. *See* Local Rule 105.6 (D.Md 2004). For the reasons stated below, I shall grant the motion to dismiss.

FACTS

The following summary of facts is drawn from the complaint.

The 58 plaintiffs worked for the Red Cross at its Holland Laboratory for the Biomedical Sciences in Rockville, Maryland. Defendant Jones is the human resources manager at the laboratory and defendant Hansen is a senior counsel in the Office of the General Counsel.

During the summer of 2003, the Red Cross decided to terminate some of its employees. Complaint ¶14. The layoffs were not announced at that time. Then, in October 2003, the Red Cross amended its severance policy, allegedly without giving notice to employees. *Id.* at 15. On November 12, 2003, at a meeting attended by Jones, plaintiffs learned that their positions were to be eliminated. However, the positions were not being eliminated immediately, and as an incentive for the plaintiffs to remain, Jones reassured them

---

[3]In general, a motion to dismiss will not be granted unless a plaintiff can prove no set of facts that would support his claim and entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). In considering a motion to dismiss, the court accepts as true all well-pleaded allegations and views the complaint in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993). Of course, the issue of ERISA preemption presents a pure question of law. *See Tri-State Machine, Inc. v. Nationwide Life Ins. Co.,* 33 F.3d 309, 311 (4th Cir.1994), *cert. denied,* 513 U.S. 1183 (1995).

that they would receive severance pay. The plaintiffs then contacted their human resources representative, who gave them a copy of the Red Cross severance plan. According to plaintiffs, the plan had been secretly and improperly amended in October 2003, but they did not receive a copy of the plan that included the October amendments. *Id.* at 16.

The plaintiffs were terminated on June 30, 2004, and many of them found new jobs at the University of Maryland. *Id.* at 18. Despite the reassurances from Red Cross personnel, and despite the plaintiffs' assertions that they met all of the eligibility requirements, the Red Cross never awarded them severance pay.

The plaintiffs allege that the Red Cross failed to follow proper procedures when it denied them their severance pay. In addition to not giving the plaintiffs notice of a change in the severance pay policy, the defendants allegedly failed to give plaintiffs letters stating the reasons the claims were denied. *Id.* at 22. Plaintiffs also assert the Red Cross failed to afford them a proper appeals process.

## DEFENDANTS' CONTENTIONS

In their motion to dismiss, the defendants argue: (1) the Red Cross severance plan is a "plan" under the terms of ERISA, and therefore the federal statute preempts the severance pay claims (but not the retention pay claims) asserted under the Maryland Wage Payment Act; and (2) all the claims against individual Red Cross "fiduciaries" fail because ERISA § 502 does not provide a cause of action for the type of relief the plaintiffs seek in their complaint.

First, the Red Cross seeks to show that ERISA applies to severance plans like the one

-3-

in question here. "[I]t is beyond question that plans established by an employer to provide severance benefits are employee welfare plans within the scope of ERISA." *Biggers v. Wittech Indus., Inc.*, 4 F.3d 291, 297 (4th Cir. 1993). Moreover, the Red Cross points out that "[a]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted." *Aetna Health v. Davila*, 542 U.S. 200, --- (2004).

The Red Cross distinguishes the instant case from *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1 (1987), and *Gresham v. Lumbermen's Mut. Cas. Co.*, 404 F.3d 253 (4th Cir. 2005). In *Fort Halifax*, the Court found that an ERISA *plan* does not exist if the obligation to pay severance benefits does not involve an on-going administrative program or an obligation to pay benefits on a regular basis. 482 U.S. at 11-12. The Court held that the severance benefits mandated under state law in question did not fall under ERISA because the state-mandated benefits involved only a one-time lump payment and there was "no administrative scheme whatsoever to meet the employer's obligations." *Id.* at 12.

At issue in *Gresham* was whether, in light of *Fort Halifax Packing Co.*, a specific severance-benefit offer by an employer, used to entice a prospective employee, was part of the employer's established severance plan for purposes of ERISA. *Gresham*, 404 F.3d at 259. The Fourth Circuit held that, because a letter putting forth the offer operated separately from the general severance plan, it was not a "plan" for purposes of ERISA – and thus there was no preemption. *Id.*

The Red Cross contends that, unlike the circumstances in *Fort Halifax Packing Co.*, *Gresham* and similar cases, "this case involves an employer's on-going, generally applicable program for providing severance benefits to employees under specific circumstances– precisely the common-sense meaning of 'plan.'" Defendants note that the Red Cross plan requires "an extensive and ongoing administrative scheme," and that the plan requires discretionary decisions by plan administrators.

For their part, Jones and Hansen seek dismissal of the claims asserted against them based on an alleged breach of fiduciary duty. They point out that the complaint does not specify the section of ERISA under which the plaintiffs bring their claims for breach of fiduciary duty. In any event, they assert, neither § 502(a)(2) nor § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(2) or (a)(3), affords the relief the plaintiffs seek. They argue that § 502(a)(2) is inapplicable because it permits claims brought only on behalf of the plan as a whole, and not claims brought on behalf of individual participants for individual benefits. *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985). Here, plaintiffs seek individual payment of their benefits. Further, defendants contend, § 502(a)(3) is inapplicable because that section affords only "equitable relief." *Varity Corp. v. Howe*, 516 U.S. 489, 491 (1996). Here, they argue, the plaintiffs are seeking compensatory damages that, at most, are thinly veiled as equitable relief.

## PLAINTIFFS' CONTENTIONS

Plaintiffs respond to defendants' arguments with the following contentions: (1) defendants improperly attached exhibits to their motion to dismiss and the court should not

consider matters outside the pleadings in ruling on the motion;[4] (2) the ostensible "plan" is a sham because defendants followed none of the requisite administrative requirements in amending or administering it;[5] (3) defendants made severance offers to the plaintiffs that were discrete from the severance plan and therefore their position is akin to the plaintiff in *Gresham*;[6] and (4) the relief sought from the individual defendants could properly be characterized as "equitable."[7]

ANALYSIS

It is plain that defendants' motion must be granted.

---

[4]Exhibit A is a Severance Policy dated "effective February 15, 2002." Exhibit B is a Severance Policy dated "effective October 22, 2003." Exhibit C (undated) is called "Summary Plan Description Severance Pay Plan." Exhibit D (undated) is called "Severance Agreement and General Release." Exhibit E (undated) is also called "Severance Agreement and General Release." Plaintiffs urge the court to not consider these exhibits, asserting that defendants have taken "great liberties in attaching numerous incomplete and unauthenticated documents as exhibits to their Motion to dismiss, without affording counsel for the plaintiffs the opportunity to examine complete and authentic copies of these documents . . . and depose certain designees of the Red Cross regarding these materials."

[5]Plaintiffs state, *inter alia*, that the Red Cross "does not have a formal application process for severance pay; no evidence supports that any of the purportedly authorized individuals actually altered or authorized the purported alteration of the severance policy in accordance with the Red Cross' position; the purported changes to the severance policy were never communicated to the plaintiffs . . . ."

[6]Plaintiffs argue that the controversy here is similar because the defendants made separate contractual statements saying the plaintiffs were entitled to severance "during a time period when the Red Cross was attempting to retain employees prior to massive, anticipated layoffs, thereby inducing the plaintiffs to remain with the Red Cross during this important transition period."

[7]Plaintiffs argue that their claims against Jones and Hansen are viable because they have – or could have – equitable remedies. As an example, the plaintiffs state that it is possible that the court could order the Red Cross to establish a payment plan in favor of the plaintiffs. If this were the case, "the plaintiffs would be entitled to an equitable order as to the individuals expected to carry out the payment plan."

A.

As a preliminary matter, the court may properly consider the exhibits attached to the motion to dismiss– the different versions of the Red Cross severance plans– notwithstanding plaintiffs' argument that the documents are "incomplete and unauthenticated," and that they have not had a chance to examine them or depose the other side about them.

Generally, a defendant filing a Rule 12(b)(6) motion can attach a document to his motion if it is a document upon which the plaintiff relied in his complaint. *See McRae v. Rogosin Converters, Inc.*, 301 F. Supp. 2d 471, 476 n.2 (M.D.N.C. 2004) (allowing a defendant to attach a pension plan to a motion to dismiss when both sides relied on terms of the plan in their arguments); *Brass v. Am. Film Techs., Inc.,* 987 F.2d 142, 150 (2d Cir. 1993) (allowing inclusion of a contract that was the source of the dispute); *Hull v. Policy Mgmt. Sys.,* 2001 WL 1836286, at *1 (D.S.C. February 9, 2001) (allowing inclusion of an employee pension plan when both sides relied on it).

Plaintiffs do not make a persuasive argument in their attempt to raise a question as to the genuineness, authenticity, or completeness of the exhibits; they offer no reason for the court to suspect the documents are not genuine. Nor can plaintiffs cite any case law supporting their view that the court should not consider the attachments. Furthermore, it defies common sense to not consider the plan itself, including updated versions of the plan, when the court is trying to determine the fundamental question of whether the severance pay at issue was part of an ERISA plan. Accordingly, I deem the exhibits attached to the defendants' motion properly before the court.

B.

Once the Red Cross' severance plan is taken into consideration, it is clear that the plan is governed by ERISA. The plan explicitly defines itself as an ERISA plan, and even provides its ERISA Plan Identification Number: 510. Defendant's Motion to Dismiss, Exhibit C at 7. The plan lists an administrator and outlines a claims-review and appeals process. *Id.* Under the heading "Your ERISA Rights," the plan states: "Your rights to benefits under the Severance Pay Plan are covered by the Employee Retirement Income Security Act of 1974 (ERISA), which is designed to protect employee's rights." *Id.* at 8.

There is simply no doubt that ERISA preempts state law with regard to the Red Cross severance plan. The Fourth Circuit clearly stated the rule in *Holland v. Burlington Indus., Inc.*, when considering whether ERISA preempted North Carolina's wage payment act for purposes of benefits owed under a severance plan:

> Given the unparalleled breadth of ERISA's preemption provision, we have no trouble concluding that the state actions at issue are preempted.  The state law here essentially requires employers to pay wages due upon termination of employment... Insofar as this statute is invoked in pursuit of benefits allegedly due under Burlington's severance pay play, it "relates to" an employee benefit plan covered by ERISA.

772 F.2d 1140, 1147 (4th Cir. 1985), *summarily aff'd*, 477 U.S. 901 (1986).

In addition, contrary to plaintiffs' assertions, *Holland* was not overruled *sub silento* by the Supreme Court in *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1 (1987). *Fort Halifax Packing Co.* considered whether ERISA preempted a statute requiring a one-time severance payment in the event of a plant closing.  *Id.* at 4. The Court held that ERISA did not preempt

-8-

because the state law did not require the establishment of a *plan* in the sense envisioned by ERISA. *Id.* at 7-8. The Court went so far as to clarify that it was not overruling *Holland*, stating: "[t]hat holding [*Holland*] is completely consistent with our analysis above." *Id.* at 17. The dissent may have argued otherwise, as the plaintiffs point out, but that does not dictate how this court should rule.

Nor does *Fort Halifax Packing Co.* lend support to the plaintiffs' argument that ERISA does not preempt state law in the instant case. The Red Cross had a complete structure in place to determine and maintain severance payment– precisely the type of plan ERISA was intended to regulate. The structure is set forth in writing in the Red Cross Severance Pay Plan. In fact, the Red Cross plan is similar to the plan referred to in *Holland*, including payment levels based on tables, application criteria and restrictions. 772 F.2d at 1144 n.2. Benefits under both plans are paid out of the organization's general fund.

Equally unpersuasive is the plaintiffs' argument that the plan was essentially a sham because the Red Cross did not follow proper procedures. The plaintiffs assert that "[t]he Red Cross never sought to comply with ERISA respecting its severance pay policy, and therefore is not entitled to the sweeping preemptive effect of this legislation." If this were the case, however, employers would be able to avoid ERISA simply by flouting its procedural requirements. That would defeat the purpose of the Act.

In *Gilbert v. Burlington Industries, Inc.,* 765 F.2d 320, 328-29 (2d Cir. 1985), *summarily aff'd*, 477 U.S. 901 (1986), the Second Circuit considered the same argument raised by the plaintiffs here. In *Gilbert,* the defendant employer "failed to comply with

[ERISA's] applicable reporting, disclosure and fiduciary requirements." *Id.* at 328. The plaintiff argued that the failure to comply with federal regulations should estop the defendant from asserting ERISA as a defense to state-law claims. *Id.* However, the court held that ERISA still preempted the state law – with the caveat that the court reviewing the denial of severance benefits could do so in the context of the employer's failure to comply with ERISA. *Id.* The same reasoning applies to the case at hand. Even if the Red Cross flouted the ERISA requirements– particularly in the area of notice– the federal statute preempts the state statute. The Red Cross' alleged administrative failures may be relevant at a later stage of these proceedings, but they have no bearing on the issue of preemption.

Plaintiffs' argument that Red Cross officials offered them at the November 12, 2003, meeting a severance plan separate from the regular American Red Cross Severance Pay Plan provides at least a plausible basis for recognizing a non-preempted state law claim– but that claim ultimately fares no better than their other arguments. The former employees allege that the Red Cross "made oral representations at the time the plaintiffs' terminations were announced assuring the plaintiffs that they would receive severance under the severance plan." Complaint ¶ 13.

As mentioned above, in *Gresham*, the Fourth Circuit held that a severance arrangement outside the employer's normal ERISA severance plan could permit a cause of action under state law. There, an employer gave an offer letter to one employee promising specific "severance protection" that was different from the company's established plan. *Gresham*, 404 F.3d at 256. As the *Gresham* court reasoned:

> substantial differences between the severance provision of
> [employee's] employment agreement and the terms of the
> Severance Plan – most notably the significantly greater amount
> of the benefit promised to [employee] and the absence of any
> conditions other than termination without cause – make clear
> that [employer's] promise to pay [employee] severance operated
> independently of the Severance Plan.

*Id.* at 259. Because of that separation between the individual offer and the established plan,

the *Gresham* court held that ERISA did not preempt the plaintiff's claim under the Maryland

Wage Payment and Collection Law. *Id.*

The instant case, however, does not feature a superceding contract as was the case in

*Gresham*. The reassurance that the Red Cross made to the employees upon the

announcement of their imminent termination did not create a contract along the lines of the

offer letter in *Gresham*. Even viewed in the light most favorable to plaintiffs' allegations,

the Red Cross officials were not promising something beyond the normal severance plan;

rather they were promising that the employees would fall under the plan. *See* Complaint ¶

13 (alleging that employees were promised they would "receive severance under the

severance plan"). For this reason, it is clear that the Red Cross was not making a severance

offer that was distinct from their normal benefit plan. ERISA, therefore, preempts.

## C.

The plaintiffs' claims against defendants Jones and Hansen under ERISA shall be

dismissed for failure to state a claim upon which relief can be granted. It is undisputed, as

defendants contend, that ERISA does not create a cause of action for employees to collect

payment of individual claims from individual administrators for breach of fiduciary duty.

Such claims lie under ERISA § 502(a)(1)(B) against the plan or the plan administrator in his official capacity. Neither § 502(a)(2) nor § 502(a)(3) accommodates the plaintiffs' claims.

The purported claims under § 502(a)(2) fail because that section only allows a cause of action for individuals to recover on behalf of the plan. "A fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuses of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985). The Fourth Circuit echoed that rule in *Arevalo v. Herman*, 2005 WL 900150, *4 (4th Cir. 2005): "Since the relief the employees seek is payment of their individual medical claims, section 1132 (a)(2) affords them no relief."

Here, plaintiffs are not trying to recover on behalf of the plan. Their complaint states: "Martin Jones and Christian Hansen were responsible for administering the severance pay plan, retention pay plan and pension bridging benefits plan, and as such, they were acting as fiduciaries to the plaintiffs and are individually liable to the plaintiffs for any breach in their fiduciary duties." Complaint ¶ 55. The plaintiffs, moreover, ask for "$727,433 in severance pay . . . ." Complaint ¶ 58. Consequently, because plaintiffs do not seek to benefit the plan in this action, § 502(a)(2) is inapplicable.

Plaintiffs also purport to assert a claim under § 502(a)(3), but that effort fails as well. The Supreme Court has made it clear that § 502(a)(3) provides for equitable relief and not money damages. *Varity Corp. v. Howe*, 516 U.S. 489, 510 (1996). "Equitable relief" means "those categories of relief that were typically available in equity (such as injunction,

mandamus, and restitution, but not compensatory damages)." *Mertens v. Hewitt Associates,*
508 U.S. 248, 256 (1993). The Court went on to explain that "monetary relief for all losses
. . . sustained as a result of [an] alleged breach of fiduciary duties . . . [was] the classic form
of *legal* relief." *Id.* at 255; *see also Rego v. Westvaco Corp.*, 319 F.3d 140, 145 (4th Cir.
2003) (quoting *Mertens*).

Plaintiffs attempt to circumvent this rule by asserting that their claim could be
construed to include equitable relief. For example, they argue, if this court were to decide
that they were entitled to payments over a period of time, the court could issue an equitable
order to force payment.  However, plaintiffs here are hiding behind a thin veil. They are
using a tactic similar to the one rejected by the Supreme Court in *Mertens*: "Although they
often dance around the word, what petitioners in fact seek is nothing other than
compensatory damages." 508 U.S. at 255. If plaintiffs are able to prove their entitlement to
severance benefits, the court has no doubt that the Red Cross will honor such a final
determination and there will be no need to exercise an equitable jurisdiction over the
fiduciaries of the plan.

Thus, because the plaintiffs do not have a cause of action against the individual
defendants under either § 502(a)(2) or § 502(a)(3), those claims for breach of fiduciary duty
shall be dismissed.

CONCLUSION

For the reasons stated above, plaintiffs' claims under the Maryland Wage Payment
Act shall be dismissed because the Maryland law is preempted by ERISA. In addition, the

plaintiffs' claims against individual defendants Jones and Hansen shall be dismissed because

ERISA does not allow the type of relief that the plaintiffs seek.


Filed: October 11, 2005                                         _____/s/_____
                                                               Andre M. Davis
                                                               United States District Judge